The first and fourth counts of the declaration in this case, allege a promise, by the defendant, to marry the plaintiff, on request; the second and third, to marry her, on request, after his return from a certain contemplated voyage. The defendant claims, that none of the evidence of the plaintiff supported the two former counts, on which alone, under the charge, a verdict for the plaintiff could be rendered.
The law construes a promise of marriage generally, that is, without specifying any particular time for its celebration, to be a promise to marry, on request. Proof of such a promise would, therefore, support the two former counts. But proof of a promise to marry at a specified future time, or on the happening of a future event, as, for instance, on a return from a certain voyage, would not support them. 1 Greenl. Ev. § 66. Atchinson
v. Baker, Peake's Add. Ca. 103. Cole v. Cottingham, 8 Car. Pa. 75. (34 E.C.L. 297.)
A majority of the court(a) are of opinion, that the *Page 506 
evidence of the plaintiff conduced to prove a general promise to marry, on the part of the defendant. The contract between the parties was not in writing, nor was there any direct evidence of an express promise by him; but the proof of that contract consisted of the conduct of the parties and the admissions of the defendant. Without adverting to the other evidence, we think that, by a fair construction of the testimony of the two first witnesses, the sister of the plaintiff and her husband, it tended to prove, that the contract of marriage between the parties, was a general engagement, without reference to any particular time or future event, when it was to be carried into effect, which would amount only to a promise to marry, on request; and that the arrangement between the parties respecting the celebration of it, after the defendant should return from his contemplated voyage, was subsequent to their entering into the contract, and only a decision by them as to the time when the performance of such contract should take place. The fair inference from the declarations of the defendant, as stated by these witnesses, is, that after their engagement, the time when the marriage should take place, became a subject of consultation between them, in which they came to a partial, though not definitive determination, that it should be celebrated before he should leave on his next voyage; but that, in consequence of his being required to sail sooner than he had expected, they concluded to postpone it until his return. The first of these witnesses testified, that the defendant, to a question whether the postponement of the marriage supposed to be indicated by an exchange of Daguerreotypes, was not a new idea, replied, "yes; we thought of being married before, but the owners want me to sail, and we have concluded to be married on my return." The second witness testified, that, in regard to the circumstances attending the taking of the Daguerreotypes, the defendant said, "I have made different arrangements as to the time of going tosea, and I expect to go the first of next week; Frances (the plaintiff,) and I have given up getting married till I comeback." These expressions of the defendant are clearly not such as he would have used, if he had been speaking of a contract of marriage in which the particular time of its celebration was agreed on, when such contract was made, and of which, therefore, an *Page 507 
agreement as to such time formed a part. His language indicates, not that the original contract was given up, or to be departed from, but only that, as a matter of convenience, the time of its performance had been postponed, by a subsequent arrangement. SeePhillips v. Crutchly, 3 Car. Pa. 178. (14 E.C.L. 260.) Potter
v. Deboos, 1 Stark. Ca. 82.
The next question respects the correctness of the charge, which was, that if there was a promise to marry, without any specification as to the time when it was to be performed, and it was afterwards arranged by the parties, that the ceremony of marriage should not take place until the defendant should return from his contemplated voyage, such evidence would be applicable to the first and fourth counts, and a verdict might be rendered on those counts, for the plaintiff. The defendant claims, that such a subsequent arrangement would constitute a new and different contract between the parties, which would discharge the former one. It would, undoubtedly, be competent for the parties, after the making of the first general contract, to make another one, by which they should agree to marry each other, on or after a particular future event, such as the return of the defendant from his expected voyage, in which case, the last agreement, being wholly different in its terms from, and indeed inconsistent with, the first, would supersede and annul it. The time for the performance of these agreements would, by their terms, be different; a performance of both must, from their nature, take place at different times; and the obligations of the parties under them might be contradictory.
But a mere arrangement by the parties fixing the time when an existing contract, to marry, on request, should be carried into effect, would not constitute the formation of a new contract, but would be entirely consistent with the subsisting agreement, have respect to and recognize its continued existence, and be a provision only as to its performance. A request or proposition, by the plaintiff, to the defendant, to celebrate the marriage, at a specified time, and an assent thereto, by the latter, would no more have the effect of destroying the original agreement, by the substitution of another, than, in the case of an agreement by one, to pay another a certain sum of money, or do any other act, on request, or in a reasonable time, a subsequent understanding between *Page 508 
them, that the act should be done at a particular time, would constitute an abandonment of the contract and the formation of another. The same principle applies to each of these cases. Such arrangement would be an act of the parties, which would furnish evidence of what would be a reasonable time for, and probably also of a request of, performance; but to prove the making of a new contract, more explicit proof would be required, that such was the intention of the parties. On this point, therefore, the charge was correct.
But we think that part of it was erroneous, in which the jury were instructed, that the contract, as stated in the second and third counts, was within the statute of frauds; and therefore, must be in writing. It is now well settled, that it was not an agreement made upon consideration of marriage within that statute. Cocke v. Baker, But. N.P. 280, S.C. 1 Stra. 34. Nor, in our opinion, is the agreement, as alleged in those counts, one which, by the true construction of that statute, was not to be performed within one year from the making thereof. It is not alleged, in any form, that it was made with reference to, or that its performance was to depend on the termination of a voyage which would necessarily occupy that time. It is only alleged, that it was expected by the parties, that the defendant would be absent for the period of eighteen months. But this expectation, which was only an opinion or belief of the parties, and the mental result of their private thoughts, constituted no part of the agreement itself; nor was it connected with it, so as to explain or give a construction to it, although it naturally would, and probably did, form one of the motives which induced them to make the agreement. The thing thus anticipated did not enter into the contract, as one of its terms; and according to it, as stated, the defendant, whenever be should have returned, after having embarked on the voyage, whether before or after the time during which it was thus expected to continue, would be under an obligation to perform his contract with the plaintiff. As it does not therefore appear, by its terms, as stated, that it was not to be performed within a year from the time when it was made, it is not within the statute. Anon. 1 Salk. 280. 1 Ld.Raym. 316. Holt, 326. Peter v. Compton, Skin. 353.Fenton v. Emblers, 3 Burr. 1278. Moore v. Fox, 10Johns, R. 244. Peters v. West-borough, *Page 509 
19 Pick. 364. Wells v. Horton, 4 Bing. 40. (13 E.C.L. 332.)Linscott v. McIntire, 3 Shep. 201.
It is unnecessary for us to determine what would be the effect of proof that the event, upon which the performance of a verbal contract depended, could not by possibility take place within a year from the making thereof, when it did not appear from the contract itself that it was not to be performed within that time; because there was no claim, in the present case, which raised that point.
If however the evidence of the plaintiff were not admissible, under the first and fourth counts, still, as it would, in that case, confessedly support the second and third; and the verdict here is a general one for the plaintiff; justice would not require a new trial, and we should not set aside the verdict.
Respecting the damages given in this case, although they are higher than we should have awarded, they do not appear to us to be so flagrantly excessive or disproportioned to the injury received by the plaintiff, that we ought to disturb the verdict, on that ground. In such a case as this, the law furnishes no precise or definite rule of damages, and their assessment is peculiarly within the province of the jury; and although it would be competent for us to grant a new trial, if the damages were palpably and grossly excessive, it is a power which has been very rarely exercised, and should be reserved for cases, where very clear, definite and satisfactory reasons can be given for such interference. This, in our opinion, is not such a case.
A new trial, therefore, is not advised.
In this opinion the other Judges concurred.
New trial not to be granted.
(a) Allusion is here made to the opinion of the Chief Justice, who at first dissented, but, as the reporter understands, ultimately concurred, or at least acquiesced in the decision.
 *Page 154